## T. Henry Mylott *v.* Frank Skinner, Appellant.

*Usury—Renewal of original obligation under guise of new loan.*

Where certain transactions, although made to assume the guise of payment of one loan and the creation of another, amount in reality to the monthly renewal of an original loan at a usurious rate of interest, all payments in excess of legal interest are to be applied on the principal.

*Malicious prosecution—Evidence as to nature of transaction.*

Where a prosecution has been undertaken without foundation, the animus may be shown by proof of a threat to take summary proceedings against the alleged debtor. Evidence is properly admissible which tends to throw light on the real character of the transaction.

Argued Oct. 10, 1899. Appeal, No. 80, Oct. T., 1899, by defendant, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1897, No. 91, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by SMITH, J.

Trespass. Before WILTBANK, J.

It appears from the evidence that plaintiff, an employee of the Philadelphia & Reading Railroad Company, borrowed from defendant, a broker, $10.00 on September 1, 1895, agreeing to pay it, September 30, 1895. By agreement he was to return $11.00 at that time, $1.00 being the broker's commission or fee for his service. At the time of the transaction plaintiff made an indenture of sale and assignment of his salary as security, the indenture being absolute on its face, and transferring to de-

fendant the title to his salary. This indenture was not sent to the office of the employer at the request of plaintiff, who agreed to act as agent of defendant and collect the money and bring it to defendant. Under this arrangement plaintiff collected the money and brought it to defendant, and the obligation covering that transaction was canceled. A new loan was asked by plaintiff and granted; a new obligation was signed and delivered and plaintiff received the money on the new loan for one month. Similar transactions were repeated from month to month until February, 1896, when the loan was increased to $15.00, under precisely the same conditions as the earlier ones; at the end of the month plaintiff collected the money, brought it to defendant and all obligations were destroyed. It so continued until December 31, 1896, when the last loan was paid, all papers destroyed and a final loan made, out of which the present suit arose. *Plaintiff collected the salary, but failed to bring it to defendant, and the note remained unpaid. In 1897, the defendant wrote three letters to plaintiff, calling his attention to the matter, and then consulted an attorney, Mr. Moyer, who advised him to arrest plaintiff for embezzlement, and a warrant was accordingly issued. In July, 1897, plaintiff was arrested and held in $300 bail to appear before the quarter sessions. The bill was subsequently ignored and plaintiff caused to be issued a capias in trespass.

At the trial the court admitted, under exception, the following offer of plaintiff:

[I propose to prove that Mr. Jones is the comptroller of the Philadelphia & Reading Railroad Company, and has been for a number of years, and is head of the department in which plaintiff is employed; that no notice was ever given to the railroad company of any of these assignments of salary; that before this transaction occurred Mr. Skinner was notified by Mr. Jones that the Philadelphia & Reading Railroad Company would refuse to recognize any assignments of salary made for those loans, and that if any clerk dealt with Mr. Skinner it would be cause for his discharge, and that this was all known to Mr. Skinner before this loan was made.] [1]

The court charged the jury in part as follows:

[The advice of counsel, in order to excuse a man, when he

does a thing of this character, must be founded on the lawyer's actual knowledge of all the facts in the case, and although you will find that there was advice of counsel, you cannot find that that excused this defendant unless you are satisfied that when counsel gave that advice he knew all the facts.   You are to consider, first, did Mr. Skinner tell Mr. Moyer that this was not his own money, that it was the money of one S. P. Skinner? Did Mr. Skinner tell Mr. Moyer that he had had an interview with Mr. Jones, of the Philadelphia & Reading Railroad Company, and Mr. Jones had said an assignment of salary would not be recognized?   In order to reach an answer on that point you have to consider whether or not you believe Mr. Jones, who testified that he did have such an interview.   Mr. Skinner states that he had an interview with him, but he cannot recall any of the things that were said.   If you do not believe Mr. Jones, then that consideration that I have presented to you is out of view; if you do believe Mr. Jones, then you have to answer the question, Did Mr. Skinner, in talking to his counsel, not only tell him that this was not his money, but was the money of S. P. Skinner, but did he also tell him that Jones, of the Philadelphia & Reading Railroad Company had informed him that no assignment of salary would be recognized? . . . . If you find that there was not a full and adequate statement to counsel, even in respect of one fact, and much more of many facts, then you will find that the defendant has not exhibited an adequate excuse, and if the circumstances in that situation show to you that from which you may infer malice, it will be your duty to find a verdict for the plaintiff.

This transaction went along for some time (you know the time), and it ended as it may be considered such transactions do end : Where one man is continuously taking from another what the other knows to be more than the lawful rate of interest for his loans, he is likely to reach a point of time when the other will say, " Well, I won't pay you anything more ; you have had more than under the law you could have had, and I am going to stop paying you," and such was the condition of things here. . . . Up to that time he (plaintiff) had paid to him (defendant) in excess of the loans and legal interest somewhat over $5.00.   He had paid him $21.00 and some cents, whereas the debt was only between $16.00 and $17.00.] [2] . . . .

[I charge you that Mr. Mylott, according to the case shown to you by both sides, according to the proofs, was not guilty of embezzlement.   I charge you, therefore, that when the defendant, Skinner, procured upon his affidavit a warrant for Mylott's arrest, he committed a wrong and was guilty of an unwarranted prosecution.] [3]

The jury gave a verdict for $2,100 which was subsequently reduced by the court to $500, and judgment entered thereon. Defendant appealed.

*Errors assigned* were (1) in admitting under exception evidence in support of plaintiff's offer, reciting said offer.   (2, 3) To portions of the judge's charge, reciting same.

*J. M. Moyer*, for appellant.—That plaintiff's assignment was valid and binding and vested title in the defendant is shown by Ruple v. Bindley, 91 Pa. 296.

The learned judge took into account all the charges of former loans, which were canceled and paid, and charged them against the last loan.   The evidence clearly shows that as each loan matured it was paid, the evidence of debt destroyed, and after that a new loan followed.   In regard to this point the law is well defined.

In Hopkins v. West, 83 Pa. 109, the court said, "A defendant who voluntarily pays a judgment including usurious interest cannot recover back the usurious interest."

In Taylor v. Breisch, 20 W. N. C. 343, the same court said: "All our recent decisions are to the point that a defense of usury against one obligation cannot be set up against an action upon an entirely distinct and independent obligation, even between the same parties."   To the same effect are the following: Maher's App., 91 Pa. 516, and Read's App., 24 W. N. C. 76.

It is submitted that the entire offer was wholly immaterial to the issue, and the only effect it had, especially under the charge of the learned judge, was to prejudice the minds of the jury against the defendant.   Whether Jones or the railroad company had notice of the assignments made by Mylott was of no earthly consequence.   His wages were his own when earned, and he could assign to whom he pleased, no matter what Mr.

Jones thought of the act—his opinion could in no manner invalidate the assignment.

Mylott did borrow money from Skinner, and he did make an assignment, nor has he been discharged. He had the absolute legal right to assign his wages if he saw fit to do so, Mr. Jones's feelings to the contrary, notwithstanding, and the offer was improperly admitted.

Advice sought, received and acted upon results in probable cause, and is an absolute defense in an action for malicious prosecution : Barhight v. Tammany, 158 Pa. 545.

*John G. Lamb*, for appellee.—By the term " malice " is meant any indirect motive of wrong. It may be any motive other than that of simply instituting a prosecution for the purpose of bringing a person to justice : 14 Am. & Eng. Ency. of Law, 22.

It was not incumbent upon the appellee to prove in this case either want of probable cause or malice, because of the fact, shown conclusively by the appellant's own letters, written long after the alleged embezzlement, that the prosecution was instituted solely for the purpose of compelling the payment of a debt alleged to be due.

In such a case the law implies both malice and want of probable cause : Prough v. Entriken, 11 Pa. 81.

The assignment of error as to the admission of the offer to prove certain facts by the testimony of Mr. Jones cannot be sustained.

The objection was a general one to the entire offer, and if any part of the testimony was competent, it was not error to overrule the objection : Zuver v. Clark, 104 Pa. 222.

The jury have decided in this case that the appellant did not act in good faith in the matter, and this Court will not, it is confidently believed, disturb their verdict.

OPINION BY SMITH, J., December 13, 1899 :

The plaintiff borrowed $10.00 of the defendant, and gave his note for $11.00, payable in one month. He also gave the defendant an assignment of his wages for the month; but the defendant, instead of collecting the money thus assigned, authorized the plaintiff to receive it for him. At the end of the month, the plaintiff paid the defendant $11.00 ; the note and assign-

ment were destroyed; the plaintiff received back $10.00 as a loan, gave a new note for $11.00, with an assignment of his month's wages, and was again authorized to collect the money assigned. This process was repeated monthly for sixteen months, the amount of the loan being meantime increased to $15.00, for which the plaintiff gave his note for $16.50. During this period the plaintiff paid $5.00 for the loan of $10.00 for five months, and $16.50 for the loan of $15.00 for eleven months; an amount more than sufficient to pay the loans with legal interest.

The loan of $15.00, the note, the assignment, and the plaintiff's authority to receive the money were renewed for the seventeenth month; but the plaintiff, having received his wages, refused to pay the note. The defendant, after writing some threatening letters to the plaintiff, began a criminal prosecution, charging him with embezzlement of the last month's wages. The prosecution ended in failure, whereupon the plaintiff brought this action.

The case thus exhibits a scheme, on the part of the lender, to secure interest on the loan at the rate of ten per cent a month, and on default of payment to convert the borrower into an embezzler, and enforce collection through a criminal prosecution or the threat of one. It was, however, carried on so long, that when the prosecution was commenced an element essential to its maintenance had been exhausted through the extinction, in law, of the indebtedness.

It is too well settled to require the citation of authorities that the transaction between the parties, though made to assume the guise of the payment of one loan and the creation of another, was in reality the monthly renewal of the original loan, at a usurious rate of interest; and that all payments in excess of legal interest are to be applied on the principal. Hence, when the last note was given the loan had been overpaid. No debt then existing, the assignment was without consideration, and the borrower could lawfully receive and retain the wages assigned.

Thus the prosecution undertaken by the defendant was without foundation. His animus in the premises appears with sufficient distinctness from his significant threat, twice repeated, to "take summary proceedings" against the plaintiff. With

the absence of probable cause, the evidence exhibits the indicia of malice in a degree that warrants the verdict.    The evidence complained of in the first specification was not without relevancy, as tending to throw light on the real character of the transaction.    Even if it added nothing essential to the plaintiff's case, it clearly did the defendant no harm.    The charge was accurate in its presentation of the law, and its references to the facts are fully justified by the evidence.

Judgment affirmed.